IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | 1:12-CR-495 (LMB) |
| EARL ABDULMALIK MOHAMMED, ) | 1:15-CV-1482 (LMB) |
| ) | |
| Movant. ) | |

MEMORANDUM OPINION

Earl Abdulmalik Mohammed ("Mohammed" or "movant"), has filed a pro se Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Motion to Vacate") [Dkt. No. 52], as well as an addendum to that motion [Dkt. No. 53], Nov. 16, 2015 ("Addendum").

Read generously, Mohammed's motion and its addendum appear to raise five issues. First, he contends that he is actually innocent of the charge to which he pleaded guilty. Motion to Vacate at 5. Second, he alleges that his guilty plea was coerced through ineffective assistance of his counsel, Pleasant Sanford Brodnax, III ("Brodnax" or "counsel"). Id. Third, he claims his sentence should be adjusted based on recent amendments to the U.S. Sentencing Guidelines relating to victim loss. Addendum at 2. Fourth, he contends that the Court erred in granting a two-level enhancement for the use of sophisticated means. Id. at 3. Finally, he argues that the Court erred when it did not grant a two-level reduction for acceptance of responsibility in calculating the appropriate Offense Level. Id. at 2. For the reasons that follow, the Motion to Vacate will be summarily dismissed.[1]

---

[1] Under Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts:

## I. BACKGROUND

On January 17, 2013, Mohammed waived indictment and pleaded guilty under a written plea agreement to a one-count criminal information charging mail fraud in violation of 18 U.S.C. § 1341. Plea Agr. ¶ 1 [Dkt. No. 17], Jan. 17, 2013; Plea Hr'g Tr. at 7:13-8:16 [Dkt. No. 43], Aug. 14, 2013. This criminal information arose out of Mohammed's business entity, Global Gold and Metals Trading LLC, which was a discount broker of precious metals. Stmt. of Facts ¶ 1 [Dkt. No. 18], Jan. 17, 2013. As Mohammed admitted in the signed statement of facts, in 2012 he "accepted orders from [] customers that he knew [the company] would not be able to fulfill in a timely manner, and caused [these] customers to be told that their orders had been shipped to them when he knew such orders had not, in fact, been shipped." Id. ¶ 2. Specifically, he created tracking numbers from USPS and Fedex that he transmitted to customers to cause them to believe orders were shipped when no parcels were actually sent. Id. ¶¶ 3-15. In total, at the time of the plea agreement, the government had identified fifteen victims who suffered a total of over $500,000 in losses arising out of this scheme to defraud. Plea Agr. ¶ 8; Stmt. of Facts ¶ 16. The victims ranged throughout the globe including victims in Canada, Australia, and the United Kingdom, as well as throughout the United States. Stmt. of Facts ¶ 16.

Mohammed was sentenced on May 2, 2013 to 108 months of incarceration followed by three years of supervised release. J. as to Earl Abdulmalik Mohammed [Dkt. No. 29], May 2, 2013. In addition, the Court imposed a restitution obligation of $4,442,871.91. Rest. Order [Dkt.

---

The judge who receives notice of the motion must promptly examine it. If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party.

No. 31], May 2, 2013.[2] This sentence was at the low end of the U.S. Sentencing Guidelines ("USSG") range.[3]

Despite waiving his right to appeal any sentence within the statutory maximum of 20 years imprisonment, Plea Agr. ¶ 5, Mohammed filed an appeal only of his sentence and raised a claim of ineffective assistance of counsel. Notice of Appeal [Dkt. No. 34], May 14, 2013. The Fourth Circuit summarily dismissed his appeal, finding that the expansive appellate waiver provision in his plea agreement barred appeal of the sentence and that the record did not conclusively show ineffective assistance. Order of USCA [Dkt. No. 48], July 8, 2014. Following that dismissal, Mohammed filed a petition for certiorari raising the issues of whether he "waived [his] right to appeal knowingly and voluntarily; and whether the sentencing guidelines that were relied upon were correct and appropriate." Motion to Vacate at 3. That petition was denied. Id. Mohammed timely filed his Motion to Vacate on November 9, 2015.

## II. DISCUSSION

### A. Standard of Review

A motion to vacate under 28 U.S.C. § 2255 provides for collateral attack on a conviction or sentence when the conviction or sentence was imposed in violation of the United States Constitution or laws, when the court lacked jurisdiction to impose the sentence, when the sentence was in excess of the maximum authorized by law, or when the conviction or sentence is otherwise subject to a collateral attack. See 28 U.S.C. § 2255(a). To prevail on a § 2255 motion,

---

[2] This restitution obligation included additional victims not mentioned in the statement of facts and restitution for the bank fraud charge for which he Mohammed had received immunity in the plea agreement. Restitution Judgment, Attach. A [Dkt. No. 32], May. 2, 2013.

[3] According to the Presentence Investigation Report at 32 [Dkt. No. 23], Mar. 18, 2013 ("PSR"), the total offense level for the count to which Mohammed pleaded guilty was 31 and he had a criminal history of Category I. Using these calculations, the USSG provisions dictated a range of between 108 and 135 months of imprisonment. Id.

a movant bears the burden of proving his grounds for collateral relief by a preponderance of the evidence. See Jacobs v. United States, 350 F.2d 571, 574 (4th Cir. 1965).

Relief under § 2255 is designed to correct for fundamental constitutional, jurisdictional, or other errors, and it is therefore reserved for situations in which failing to grant relief would be "inconsistent with the rudimentary demands of fair procedure or constitute[] a complete miscarriage of justice." United States v. Vonn, 535 U.S. 55, 64 (2002) (quoting United States v. Timmreck, 441 U.S. 780, 783 (1979)). A § 2255 motion "may not do service for an appeal," and claims that have been waived are therefore procedurally defaulted unless the movant can show cause and actual prejudice. United States v. Frady, 456 U.S. 152, 165-67 (1982). An exception applies, however, when a defendant brings a claim of constitutionally ineffective assistance of counsel. See United States v. Gastiaburo, 16 F.3d 582, 590 (4th Cir. 1994).

Under § 2255(b), a movant is to be granted an evidentiary hearing on his motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." Summary dismissal of § 2255 allegations is "warranted only if a habeas petitioner's allegations when viewed against the record of the plea hearing are palpably incredible or patently frivolous or false." United States v. White, 366 F.3d 291, 297 (4th Cir. 2004) (quoting Blackledge v. Allison, 431 U.S. 63, 76 (1977)). Because a § 2255 motion "is ordinarily presented to the judge who presided at the original conviction and sentencing of the prisoner," that judge may take into account her "recollection of the events at issue" when deciding whether to summarily dismiss it. See Blackledge, 431 U.S. at 74 n.4.

B. **Actual Innocence**

Mohammed asserts that at the time he pleaded guilty, "[he] was not aware that creating false shipping labels and lying to customers about delivery was not a violation of mail fraud if

4

my intent was to delay the delivery process and buy additional time to eventually deliver the product to customers." Motion to Vacate at 5. He continues, "[a]t no time prior to this incident or anytime thereafter did I execute a scheme to defraud customers of their monies as required under the mail fraud statute." Id. These statements are wholly inconsistent with Mohammed's sworn statements during his plea hearing. Plea Hr'g Tr. at 34:17-35:14;

To succeed on a post-conviction claim of actual innocence, a movant "must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." Schlup v. Delo, 513 U.S. 298, 327 (1995). Mohammed has not submitted any new or reliable evidence to support his claim. "Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a barred claim." Id. at 316. Accordingly, this ground is without merit.

### C. Ineffective Assistance of Counsel and Coerced Guilty Plea

To establish ineffective assistance of counsel, Mohammed must show both that (1) "counsel's performance was deficient" and that (2) "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficient performance occurs when "counsel's representation fell below an objective standard of reasonableness." Id. at 688. A movant can show prejudice when there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A showing that "the errors had some conceivable effect on the outcome of the proceeding" is not enough; a reasonable probability requires that the errors are "sufficient to undermine confidence in the outcome." Id. at 693, 694.

Defendants who plead guilty, as Mohammed did, must meet a heightened burden of proving prejudice by showing that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 57-59 (1985); see also United States v. Dyess, 478 F.3d 224, 237 (4th Cir. 2007). Furthermore, such movants "must convince the [C]ourt that a decision to reject the plea bargain would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 372 (2010). In making this showing, Mohammed's "subjective preferences, therefore, are not dispositive; what matters is whether proceeding to trial would have been objectively reasonable in light of all of the facts." United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012).

During the plea hearing, Mohammed repeatedly affirmed his satisfaction with his retained counsel's representation and testified that he fully understood the count to which he was pleading guilty.

> THE COURT: Have you had enough time to thoroughly discuss everything you know about this case and any background activity with Mr. Brodnax to the extent you can?
> THE DEFENDANT: Yes.
> THE COURT: Yes? Has Mr. Brodnax discussed with you the nature of this mail fraud charge and any ways you could possibly defend yourself against the charge if you went to trial?
> THE DEFENDANT: Yes.
> THE COURT: Are you fully satisfied with the way Mr. Brodnax has represented you in this case?
> THE DEFENDANT: Yes.

Plea Hr'g Tr. at 33:3-14; see also id. at 5:1-2; 6:19-23; 34:4-7. Importantly, under Fourth Circuit precedent, "[a]bsent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1299 (4th Cir. 1992); United States v. Lemaster, 403 F.3d 216, 221 (4th Cir. 2005) ("In the absence of extraordinary circumstances . . . , allegations in a § 2255 motion that

directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false.") (internal quotation marks omitted). As the Supreme Court has explained,

> [T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.

Blackledge v. Allison, 431 U.S. 63, 74 (1977).

### 1. Deficient Performance

Mohammed alleges several theories in support of his ineffective assistance of counsel claim. First, he claims that in pleading guilty, he relied upon his counsel's incorrect representation that he would receive a sentence of between zero and two years' imprisonment; second, he contends that his counsel failed to negotiate competently in the course of plea discussions; and third, he argues that counsel erred in failing to consult him when declining an offer by the Court to withdraw his guilty plea during the sentencing hearing. Motion to Vacate at 5.

Mohammed first argues that Brodnax advised him that if he pleaded guilty and made restitution to 12 to 15 customers, he would likely receive a sentence of between zero and two years of incarceration, and he relied upon that advice in entering his plea. Motion to Vacate at 5. This claim is contradicted by numerous statements Mohammed made under oath during the plea hearing as well as in the plea agreement. Mohammed, who was 47 years old and had completed some college, stated that no one, including his attorney, had promised or suggested that he would receive a more favorable sentence in exchange for pleading guilty. Plea Hr'g Tr. at 3:16-20.

> THE COURT: Other than the written plea agreement that's in court today, has anybody promised or suggested to you that by pleading guilty, you would get a lighter sentence or more favorable treatment by the Court?
> THE DEFENDANT: No.
> THE COURT: Has anyone put any force or pressure on you to plead guilty today?
> THE DEFENDANT: No.

Plea Hr'g Tr. at 38:2-9. Moreover, Mohammed affirmed under oath that he understood that the count of mail fraud to which he was pleading guilty exposed him to a possible maximum penalty of 20 years in prison. Plea Hr'g Tr. at 21:10-22. As discussed supra, to overcome sworn statements made during a Rule 11 plea colloquy, Mohammed must produce "clear and convincing evidence to the contrary." Fields, 956 F.2d at 1299. He has failed to adduce any evidence that meets this high standard, and there is nothing in the record that suggests Brodnax's performance in counseling Mohammed about whether to plead guilty was deficient in any way.

Second, Mohammed contends that his counsel "erred in not negotiating with the U.S. Attorney in order to secure the best possible outcome for me. A review of the written plea agreement demonstrates that I didn't receive any benefit or advantage as a result of the agreement." Motion to Vacate at 5. This argument is belied by Mohammed's repeated statements during the Rule 11 colloquy about his satisfaction with his attorney's performance mentioned supra. He provides no additional evidence beyond his conclusory statements to overcome the dispositive effect of his sworn statements during the Rule 11 plea colloquy. Among the benefits he received from his plea agreement was immunity from further prosecution "for the separate offense of bank fraud alleged in [a separate] criminal complaint." Plea Agr. ¶ 9. He also got the government to agree to file a motion under USSG § 3E1.1(b) for an additional one-level decrease to his offense level if he otherwise qualified for the two-level reduction for acceptance of

responsibility under USSG § 3E1.1(a).[4] Plea Agr. ¶ 4. Accordingly, there is no basis for Mohammed's claim that counsel did not negotiate on his behalf and that he received no benefit or advantage from the plea as a result.

Third, Mohammed claims that the Court offered his attorney an opportunity to withdraw his guilty plea during the course of the sentencing hearing and that his attorney declined the offer without consulting him; he asserts that had counsel consulted him, he would have withdrawn his guilty plea. Motion to Vacate at 5. Mohammed mischaracterizes what happened during that hearing; moreover, he would not have met any of the factors for withdrawing a guilty plea that are required by the Fourth Circuit under United States v. Moore, 931 F.2d 245 (4th Cir. 1991). The exchange to which Mohammed refers is as follows,

> THE COURT: Well, you're trying to say your client is innocent and should withdraw his guilty plea?
> MR. BRODNAX: No, of course not. Of course not, because he would have gotten to the point of why he pled guilty. When he pled guilty, he told you it was the creation of those false shipping labels, that's the mail fraud. I mean, he lied, no question about it. I'm going to get to that. But it was the creation of those fake shipping labels through the Postal Service that constituted the mail fraud and him not performing.

Sent. Hr'g Tr. at 25:19-26:3 [Dkt. No. 45], Aug. 14, 2013. Viewed in context, the Court's question to counsel was not an offer to allow Mohammed to withdraw his guilty plea; rather, it was a request for counsel to clarify the point he was making in support of his position on sentencing.

---

[4] Mohammed did not get the benefit of this part of the Plea Agreement because, as documented in the Presentence Investigation Report ("PSR"), he continued to engage in fraudulent conduct while on bond, which added two levels to his offense level for obstruction of justice and resulted in no reduction for acceptance of responsibility. PSR ¶¶ 27-32. Had Mohammed not been found to have obstructed justice, and had he accepted responsibility, his offense level would have been five levels lower, resulting in a total offense level of 26, which, given his criminal history category of I, would have resulted in a guideline range of 63 to 75 months, rather than 108 to 135 months.

9

Fed. R. Crim. P. 32(d) allows a defendant to withdraw a guilty plea before sentencing "upon a showing by the defendant of any fair and just reason." In assessing whether a defendant's reason is "fair and just," the Fourth Circuit has articulated six factors for a court to consider:

> (1) whether the defendant has offered credible evidence that his plea was not knowing or not voluntary, (2) whether the defendant has credibly asserted his legal innocence, (3) whether there has been a delay between the entering of the plea and the filing of the motion, (4) whether defendant has had close assistance of competent counsel, (5) whether withdrawal will cause prejudice to the government, and (6) whether it will inconvenience the court and waste judicial resources.

United States v. Sparks, 67 F.3d 1145, 1150 (4th Cir. 1995) (quoting Moore, 931 F.2d at 248). Mohammed has not satisfied any of the Moore factors. First, he has not offered any credible evidence to overcome the strong presumption of veracity conferred on his sworn and repeated assertions during the Rule 11 colloquy that his plea was knowing or voluntary. Indeed, not once in four pages of testimony during his sentencing hearing—after the Court made the inquiry Mohammed highlighted—did Mohammed ever indicate that he wanted to withdraw his guilty plea. Sent. Hr'g Tr. at 48:3-51:14. Second, he has not credibly asserted his legal innocence, as discussed supra. Third, more than three years have elapsed since he entered his guilty plea and filed this motion. Fourth, as discussed in this section, Mohammed had the close assistance of competent counsel throughout his plea. Lastly, after years of litigation in this case, including appeals and now this habeas petition, withdrawal of Mohammed's guilty plea would be prejudicial to the government and cause an unwarranted waste of judicial resources. Accordingly, and particularly when read in context, counsel's performance was not deficient when he did not consult Mohammed about withdrawing his guilty plea. As such, there is neither a legal nor a factual basis in the record to support any of Mohammed's claims of deficient performance.

10

2. Prejudice

Even if the alleged instances of deficient performance had been established, none would satisfy the baseline showing of prejudice required by Strickland, let alone the heightened burden imposed on a defendant who pleaded guilty. As mentioned supra, Mohammed must show that but for his counsel's deficient performance, he would not have entered a guilty plea. See Hill, 474 U.S. at 57-59. Notably, Mohammed's subjective preferences are not germane to this inquiry; rather, to carry this heavy burden, Mohammed must demonstrate that it would have been objectively reasonable to eschew a plea agreement in favor of going to trial. Fugit, 703 F.3d at 260.

Mohammed has not made the required showing of prejudice on his allegations that his attorney misinformed him about the term of imprisonment to which he was exposed, failed to adequately negotiate on his behalf during plea discussions, or wrongfully turned down an opportunity to withdraw his guilty plea. As an initial matter, during his plea colloquy, Mohammed acknowledged that he had reviewed several versions of the written plea agreement in the week before he pleaded guilty, Plea Hr'g Tr. at 9:12-21. These versions put him on notice of 18 U.S.C. § 1341's maximum penalty of 20 years of imprisonment. See Plea Agr. ¶ 1. Further, Mohammed affirmed during the plea colloquy that he understood the sentence he faced and that any prediction made by counsel regarding his eventual sentence was not binding on the Court. See Plea Agr. ¶ 4; Plea Hr'g Tr. at 26:12-27:15, 21:10-18.

> THE COURT: . . . What I want to make sure you understand clearly is that no matter what your lawyer or Mr. Kromberg or the case agent or anybody else on behalf of the federal government may have told you they think your ultimate sentence will be, those statements do not restrict or bind the Probation Office which will prepare the pre-sentence report or this Court when it goes to sentence you.
> Do you understand that?
> THE DEFENDANT: Yes.

Plea Hr'g Tr. 26:25-27:8. As such, the record belies the first step of the requisite showing of prejudice—that there was a reasonable probability that Mohammed would not have pleaded guilty but for the alleged ineffective assistance. See Hill, 474 U.S. at 57-59.

Moreover, even if Brodnax's performance were deficient, Mohammed does not make any credible claim that it would have been objectively reasonable to pursue going to trial on the charges he might have faced. It is worth emphasizing that the standard for prejudice in this situation is not what a jury might have found had Mohammed gone to trial, but whether he would have pleaded guilty but for the alleged ineffective assistance. See Hill, 474 U.S. at 57-59. Among the benefits Mohammed received for pleading guilty was immunity for bank fraud alleged in a separate criminal complaint in this district. Plea Agr. ¶ 9. Mohammed provides no evidence that choosing to go to trial, thereby forgoing the benefit of immunity from the bank fraud charges he faced, would have been reasonable. Indeed, the charge for which he received immunity was brought under 18 U.S.C. § 1344, which is a statute that carries a higher maximum term of imprisonment—30 years—and a higher fine—not more than $1,000,000—than the mail fraud count to which he pleaded guilty. Compl. as to Earl Abdulmalik Mohammed, United States v. Mohammed, No. 1:08-MJ-259 (E.D. Va. Apr. 11, 2008).

The Fourth Circuit has recognized that "[p]leading guilty generally involves a conscious decision to accept both the benefits and burdens of a bargain. That decision may not be lightly undone by buyer's remorse on the part of one who has reaped advantage from the purchase." Fugit, 703 F.3d 260 (4th Cir. 2012). Here, Mohammed has clearly "reaped advantage from the purchase"; he stands convicted of one count of mail fraud as opposed to potentially one count of mail fraud and one count of bank fraud, and he would have benefitted far more from his plea had he not obstructed justice and engaged in new fraudulent acts between his plea and sentencing.

12

Accordingly, he may not use what he believes is the benefit of hindsight to establish that he would not have accepted the benefits of pleading guilty but for his counsel's alleged ineffective assistance and that that decision would have been an objectively reasonable one. Accordingly, all of his ineffective assistance of counsel claims will be dismissed with prejudice.

### D. Sentencing Issues

Mohammed's last three arguments relate to how his sentence was calculated. He adopts the language of his brief before the Fourth Circuit filed during the course of his direct appeal in arguing that he should have received a two-level reduction for acceptance of responsibility and that he should not have received a two-level enhancement for the use of sophisticated means. Addendum at 2-3. As the Fourth Circuit found when it dismissed his appeal, these arguments were waived by the appellate waiver contained in his plea agreement. Order of USCA [Dkt. No. 48], July 8, 2014.

Moreover, the Fourth Circuit has held "[b]arring extraordinary circumstances, . . . an error in the application of the Sentencing Guidelines cannot be raised in a § 2255 proceeding. Section 2255 provides relief for cases in which 'the sentence was in excess of the maximum authorized by law.' Thus, while § 2255 applies to violations of statutes establishing maximum sentences, it does not usually apply to errors in the application of the Sentencing Guidelines." United States v. Pregent, 190 F.3d 279, 283-84 (4th Cir. 1999). Mohammed has failed to articulate a basis for finding any errors in the way his guidelines were calculated and has failed to articulate any extraordinary circumstances that would justify the consideration of any guideline issues on collateral review. Accordingly, Mohammed's arguments as to the acceptance of responsibility and the use of sophisticated means adjustments are without merit.

The only remaining contention is that Mohammed's sentence should be adjusted based on recent amendments to the USSG relating to victim loss and the number of victims. Addendum at 2. Mohammed argues that "the 18 level increase associated with the total amount of victim's [sic] loss in Mr. Mohammed's case should be reduced to the next level down." Id. Mohammed further argues that the same amendments direct that "'the guideline should place greater emphasis on the extent of harm that victims suffer,' suggesting that a 'victim' who has no pecuniary harm done because they have no 'actual loss' incurred should not necessarily be counted in the application of the guideline." Id. at 2-3. Because such an argument may not be entertained on collateral review, this portion of Mohammed's addendum will be construed as a motion under 18 U.S.C. § 3582(c)(2) for a sentence reduction.

Nevertheless, § 3582(c)(2) is similarly unavailing because it only applies to "the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o)," and merely gives the Court discretion to "reduce the term of imprisonment . . . if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). A reduction as a result of the amendments to USSG § 2B1.1's loss tables would be unjustified because the accompanying policy statement does not make the reduction retroactive. USSG app. C, amends. 791, 792. Indeed, the U.S. Sentencing Commission explicitly stated that the offenses committed before November 1, 2015 are governed by the previous loss tables. USSG app. C, amend. 791. Likewise, the policy statement accompanying the amendment altering the victims table to incorporate financial hardship to victims is also silent on retroactivity. As such, Mohammed's motion for a reduction of his sentence under § 3582(c)(2) also fails.

## III. CONCLUSION

For all these reasons, Mohammed's Motion to Vacate [Dkt. No. 52] will be dismissed by an Order to issue with this Memorandum Opinion.

Entered this 10th day of March, 2016.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge

15